**Robert T. SIDEBOTTOM, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 71460.**

Supreme Court of Missouri,
En Banc.

Dec. 12, 1989.

Rehearing Denied Jan. 10, 1990.

Sean D. O'Brien, Public Defender, David S. Durbin, Appellate Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Robert V. Franson, Asst. Atty. Gen., Jefferson City, for respondent.

COVINGTON, Judge.

A jury convicted Robert T. Sidebottom of first degree murder of his grandmother, § 565.020, RSMo 1986, and sentenced him to death. This Court affirmed the conviction. *State v. Sidebottom*, 753 S.W.2d 915 (Mo. banc 1988). Movant timely filed a *pro se* motion for post-conviction relief pursuant to *Rule 29.15*. He alleged ineffective assistance of counsel, illegal detainment by the police, violation of due process of law, and cruel and unusual punishment. Movant's application for extension of time within which to file an amended motion under *Rule 29.15* was sustained, and he timely filed his amended motion. The trial court overruled movant's *Rule 29.15* motion to vacate. The judgment is affirmed.

Review of the motion court's denial of post-conviction relief is limited to a deter-

mination of whether the findings and conclusions of the motion court are clearly erroneous. *Rule 29.15(j); Day v. State,* 770 S.W.2d 692, 695 (Mo. banc 1989). Findings and conclusions are deemed clearly erroneous only if a full review of the record leaves the appellate court with the definite and firm impression that a mistake has been made. *Id.* at 695–96.

Movant first contends that the motion court erred in excluding testimony of Barbara Schenkenberg, an attorney experienced in capital murder defense, concerning the effect on the outcome of the trial of alleged deficiencies of defense counsel. Ms. Schenkenberg did not attend the trial.

Over the state's objection, the trial court permitted Ms. Schenkenberg to testify regarding the performance of a reasonably competent attorney in Jackson County handling a death penalty case. Earlier in the evidentiary hearing, movant had presented evidence through the testimony of Dr. William O'Connor, a clinical psychologist, that movant was, and had been at the time of the offense, suffering from a mental disease or defect and, as a consequence of his mental status and his ingestion of chemical substances, movant's capacity was chronically impaired. Dr. R. L. Evans, a psychopharmicist, testified that the substances movant had consumed on the day in question would have influenced movant's ability to control his impulses. Movant's parents testified at the evidentiary hearing regarding movant's childhood. Movant inquired of Ms. Schenkenberg regarding whether the allegedly mitigating evidence, not adduced by counsel at trial, would have affected the outcome in the penalty phase. The state objected on the grounds that such testimony would invade the province of the court and would constitute speculation and conjecture. The trial court allowed Ms. Schenkenberg's opinion testimony as an offer of proof. Ms. Schenkenberg opined that, had the testimony of Dr. O'Connor and Dr. Evans been offered, had the movant's school and military records been offered, and had movant's parents

testified, there was a reasonable probability that movant would have received life imprisonment without possibility of parole instead of the death penalty. The motion court sustained the state's objection.

■ Generally, opinion testimony is not received where the trier of the facts is as capable as the witness of drawing conclusions from the facts proved. *Schmitt v. Pierce,* 344 S.W.2d 120, 128–29 (Mo. banc 1961) (citations omitted). In *Lewis v. State,* 623 S.W.2d 562 (Mo.App.1981), the court upheld the trial court's ruling that testimony on adequacy of trial counsel invaded the province of the court, holding that opinion evidence regarding adequacy of trial counsel is admissible only when the trier of fact, "from want of experience or knowledge," is incapable of drawing conclusions from the facts provided. *Id.* at 563. The *Lewis* court found that the trial court was as qualified as the witness to form an opinion on trial counsel's competency. *Id.*

■ Movant does not suggest on appeal that the motion court was less qualified than the witness to form an opinion on trial counsel's competency. The record clearly reflects that the motion court was at least as qualified as the witness to form an opinion on the question. The motion court did not err in excluding attorney Schenkenberg's proffered opinion testimony.

■ A number of movant's additional claims relate to ineffective assistance of counsel. To prove a claim of ineffective assistance of counsel, a *Rule 29.15* movant must show that counsel's performance was deficient and that the deficiency prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The deficiency is shown by counsel's acts or omissions which, in light of all the circumstances, were "outside the wide range of professionally competent assistance." *Id* at 690, 104 S.Ct. at 2065. Movant must also overcome the presumption that counsel's challenged acts or omissions were sound trial strategy.

*Id., citing, Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955). Counsel is presumed competent. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

■■■ Prejudice is shown by proof that, but for counsel's unprofessional errors, there was a reasonable probability that the result would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. Prejudice is not presumed from a showing of deficient performance of counsel, but must be affirmatively proved. *Id.* at 693, 104 S.Ct. at 2067. It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding, *Id.;* rather, defendant must show that there is a reasonable probability that, but for the errors by counsel, the fact finder would have had a reasonable doubt respecting punishment. *Id.* at 694–95, 104 S.Ct. at 2068–2069. If it is simpler to dispose of a claim of ineffectiveness on the ground of lack of sufficient prejudice, that course should be followed. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069. "There is no reason for a court ... to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* "The movant has the burden of proving his grounds for relief by a preponderance of the evidence." *Rule 29.15(h)*.

■■■ Movant contends that he was denied effective assistance of counsel in that his trial counsel did not object to State's Exhibit 3, a "prisoner data" sheet that referred to a rape and burglary with which movant was not charged. In a related point, movant contends he was denied effective assistance of counsel in that his trial counsel failed to request a mistrial after the jury inquired about the rape and burglary referenced in the exhibit.

The parties stipulated that the exhibit would be admitted into evidence. Neither the state nor movant's counsel realized the exhibit contained evidence of other offenses. One small box on one sheet contained the reference to other crimes, and there were numerous exhibits of which the data sheet was a part. The trial court, prosecution, and defense counsel first became aware of the reference when the jury sent a note to the judge asking if movant "had been convicted of rape + burglary or had just been charged which does not constitute guilt." After conferring with the court and the prosecution, trial counsel decided that the proper remedy was a curative instruction directing the jury not to consider these entries in arriving at their verdict. Appellant suggests that a showing of prejudice is evidenced by the fact that the jury specifically asked about the uses to which the information on the exhibit should be put.

■■■ The issue presented by movant is closely related to the first issue considered and rejected in the direct appeal of his case. Issues decided in the direct appeal cannot be relitigated on a theory of ineffective assistance of counsel in a post-conviction proceeding. *O'Neal v. State*, 766 S.W.2d 91, 92 (Mo. banc 1989). The sole factor which distinguishes the present case from *O'Neal* is the standard of review on direct appeal; movant claimed plain error in defense counsel's failure to request, and the trial court's failure to grant *sua sponte*, a mistrial. This Court found no plain error. *State v. Sidebottom*, 753 S.W.2d at 920.

On the facts of the present case and the law as applied to them, the bases for the Court's finding of no manifest injustice on direct appeal serve now to establish a finding of no prejudice under the *Strickland* test. On direct appeal, in determining the prejudicial effect of the prisoner data sheet, this Court discussed the factors to be considered in situations in which evidence of other crimes unrelated to the case at trial was admitted. *State v. Sidebottom*, 753 S.W.2d at 920. The Court found that the trial court acted promptly in directing the jury to disregard the reference to unrelated crimes, that the prosecutor made no attempt to utilize or emphasize the references on the data form, and that the prosecutor made no conscious effort to in-

ject these inferences into evidence. *Id.* In light of these factors, this Court held that the curative instruction given by the trial court was sufficient.

Under the reasoning applied in confronting the question of plain error on direct appeal, movant fails to show that, but for trial counsel's failure to object and then to request a mistrial, there was a "reasonable probability that the result would have been different." Movant thus fails to satisfy the prejudice prong of the *Strickland* test. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

Movant claims ineffective assistance of counsel in that his trial counsel failed to present an affirmative case in extenuation and mitigation during the penalty phase of the trial. Such evidence should be presented, movant argues, in an attempt to portray the defendant as a human being with assets and liabilities that must be considered in determining whether to assess the death penalty. Movant asserts that counsel should have presented evidence regarding movant's mental condition, evidence regarding the effect of the consumption of alcohol and drugs on movant's behavior, evidence from movant's parents concerning his father's alcoholism and the physical and emotional abuse inflicted on movant by his father, and evidence with respect to movant's service in the Marine Corps, movant's school history, and movant's work history.

■ In *Jones v. State,* 767 S.W.2d 41 (Mo. banc 1989), this Court stated "[C]ounsel has no absolute duty to present mitigating character evidence at the penalty phase of trial." *Id.* at 43, *citing, Mitchell v. Kemp,* 762 F.2d 886, 889 (11th Cir.1985), *cert. denied,* 483 U.S. 1026, 107 S.Ct. 3248, 97 L.Ed.2d 774 (1987); *See also, Laws v. Armontrout,* 863 F.2d 1377, 1382–83 (8th Cir.1988). Counsel has a duty, however, to make a reasonable investigation of possible mitigating evidence or to make a reasonable decision that such an investigation is unnecessary. *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066.

■ In support of his general complaint that counsel failed to present an affirmative case in extenuation and mitigation during the penalty phase, movant argues that movant's trial counsel should have obtained a second mental examination and, citing the testimony of the psychologist, Dr. O'Connor, that movant suffers from a mental disease or defect of intermittent explosive disorder.

The motion court found that movant's counsel did not put on evidence of a mental disease or defect because counsel was not aware of any problem. A full report from the Western Missouri Health Center prepared by psychiatrist Dr. Robijn Hornstra indicated that movant did not suffer from a mental disease or defect under Chapter 552, RSMo, that there was no evidence of mental retardation limiting his ability to understand or to conform his conduct to the requirements of the law, and that movant could assist in his defense. Movant had no history of mental disease or defect; neither movant nor his family apprised counsel of any disease or defect. Counsel discussed the possibility of obtaining a second mental examination with movant and explained the risk of receiving a second unfavorable opinion. The motion court was not clearly erroneous in finding that counsel's decision not to obtain a second mental examination was a reasonable strategic decision.

■ Movant contends that counsel should have adduced evidence in extenuation and mitigation regarding the effect consumption of chemical substances may have had on movant on the night of the offense. In support he points to the testimony of Dr. O'Connor and Dr. Evans. In particular, movant points to testimony of Dr. Evans that movant's use of alcohol and drugs could enhance the intermittent explosive disorder diagnosed by Dr. O'Connor. Movant further alleges that counsel made no effort to determine what effect consumption of alcohol and drugs might have had on movant.

The motion court found that counsel's decision not to employ an expert to testify

regarding the effect of movant's use of chemical substances was a reasonable, strategic decision. Counsel stated that he decided that evidence of movant's long term use of illegal drugs and alcohol would have a negative effect on the jury. Movant had informed counsel that, although he was intoxicated on the night of his grandmother's murder, he was aware of what was going on. Movant had also told his friend who drove movant to his grandmother's house that he, movant, was going to get several thousand dollars, that he would split the money with his friend, and that his friend was not to say anything if anything happened to movant's grandmother. In light of the evidence that movant was in complete control during the crime, trial counsel determined that to present evidence of movant's lack of control as a result of chemical abuse would be inconsistent. The motion court did not clearly err in finding counsel's decision not to present evidence of movant's alcohol and drug use reasonable and strategic.

■ Movant urges that his parents should have been called to testify regarding movant's home life, his father's alcoholism and the physical and emotional abuse inflicted upon movant by his father. Movant had been in trouble on numerous other occasions; had trial counsel called movant's parents or wife to testify, negative testimony relating to movant's character would most likely have been elicited on cross-examination. The motion court correctly found that counsel's decision not to call movant's parents or wife was a reasonable strategic decision.

■ Movant further argues that evidence of his school records, Marine Corps records and work records should have been offered in mitigation. Movant's school records revealed nothing other than movant's having dropped out of school in the tenth grade and having maintained a very poor scholastic record. Movant's Marine Corps record would have revealed that movant had been in the brig for being absent without leave and that he was discharged with an "other than honorable" designation. Finally, movant's work record reveals frequent job changes. Each of these "records" could reasonably be interpreted to be harmful to movant's case. The motion court did not clearly err in finding that counsel's decision not to present evidence of movant's school, work, and Marine Corps records was a reasonable strategic decision.

Consequently, as to each of movant's allegations of hearing court error in regard to trial counsel's failure to present an affirmative case in extenuation and mitigation during the penalty phase of the trial, the motion court's findings that movant's counsel performed a reasonable investigation and, after conferring with movant, made a strategic decision not to present evidence during the penalty phase, are supported by the record and are not clearly erroneous.

■ In another point, movant claims that the aggravating circumstance "one or more assaultive criminal convictions," § 565.032.2(1), RSMo, is unconstitutionally vague and overbroad, citing *State v. David,* 468 So.2d 1126 (La.1984), and that his trial counsel was ineffective for failing to challenge this aggravating circumstance.

■ Constitutional objections to jury instructions are properly raised on direct appeal. *Roberts v. State,* 775 S.W.2d 92, 96 (Mo. banc 1989). In any event, the basis for movant's challenge is meritless. *State v. David* involved a statute containing an aggravating circumstance "significant prior history of criminal activity." The Louisiana Supreme Court, noting that the jury's discretion must be curbed by legislative guidelines which narrow the class of eligible persons to those who deserve the ultimate penalty of death, concluded that the aggravating circumstance "fails to channel the jury's discretion in such a way as to rationally distinguish a case in which the death penalty is to be imposed from the many in which it is not." *Id.* at 1130.

Appellant cites no Missouri authority on the subject, ignores the fact that the Missouri statute includes the word "assaultive," and ignores the holding of *State v. Nave*, 694 S.W.2d 729 (Mo. banc 1985), *cert. denied*, 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 901 (1986), which involved the precursor to this provision and included the language "substantial history of assaultive convictions." Section 565.012.2(1), RSMo (repealed October 1, 1984). In *State v. Nave*, this Court found that the phrase "substantial history" referred to "past acts of terror of a criminal nature" stating that "the mere fact that the phrase is not measurable with mathematical precision does not render it impermissibly vague." *Id.* at 738. Although modified, the language of the present aggravating circumstance does not warrant a different result. The phrase "one or more assaultive criminal convictions," is not impermissively vague.

■ As for counsel's failure to challenge this aggravating circumstance, counsel cannot be found ineffective for failing to make a nonmeritorious objection. *Shaw v. State*, 686 S.W.2d 513, 516 (Mo.App. 1985).

■ Movant also claims that the aggravating circumstance of "outrageously or wantonly vile, horrible or inhuman," § 565.032.2(7), RSMo, is unconstitutionally vague and overbroad and fails to narrow the class of homicides deserving of the death penalty under the standard established in *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). In a related point, movant asserts that trial counsel was ineffective for failing to object on this basis.

Again, the constitutional objection to this jury instruction should have been raised on direct appeal. *Roberts v. State*, 775 S.W.2d at 96. Moreover, movant's claim is without merit. In *Mercer v. Armontrout*, 864 F.2d 1429 (8th Cir.1988), the court held that since the Missouri aggravating circumstance combined a finding of depravity of mind with the finding of outrageously or

wantonly vile, horrible or inhuman, the aggravating circumstance was sufficiently distinguishable from that found in *Maynard*, which required only a general finding that a murder is especially heinous, atrocious, or cruel.

In *State v. Preston*, 673 S.W.2d 1, 11 (Mo. banc), *cert. denied*, 469 U.S. 893, 105 S.Ct. 269, 83 L.Ed.2d 205 (1984), this Court noted several factors that should be considered in finding "depravity of mind": "mental state of defendant, infliction of physical or psychological torture upon the victim as when the victim has a substantial period of time before death to anticipate and reflect upon it; brutality of defendant's conduct; mutilation of the body after death; absence of any substantive motive; absence of defendant's remorse and the nature of the crime." Subsequently, in *State v. Griffin*, 756 S.W.2d 475 (Mo. banc 1988), this Court held that "the depravity of mind aggravating circumstance is sufficiently definite to provide a principled means to distinguish cases in which the death penalty is imposed from those in which it is not." *Id.* at 490. *Griffin* expressly held that one of these factors must be present before a finding of depravity of mind will be found to be supported by the evidence. *Id.*

In the present case, under independent review on direct appeal, this Court found the evidence sufficient to support the jury's finding of depravity of mind after specifically applying the *Preston* factors. *State v. Sidebottom*, 753 S.W.2d at 927. The Court further notes that the *Sidebottom* jury found two aggravating circumstances. When a "jury finds two or more aggravating circumstances, 'the failure of one circumstances does not taint the proceedings so as to invalidate the other aggravating circumstance found and the sentence of death thereon.'" *State v. Malone*, 694 S.W.2d 723, 728 (Mo. banc 1985), *cert. denied*, 476 U.S. 1165, 106 S.Ct. 2292, 90 L.Ed.2d 733 (1986), *quoting, State v. LaRette*, 648 S.W.2d 96, 102 (Mo. banc), *cert. denied*, 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983).

■ Movant's claim of ineffective assistance of counsel as it relates to this aggravating circumstance fails because an objection would have been meritless. *Shaw v. State,* 686 S.W.2d at 516. Movant's trial counsel stated he specifically declined to object because this Court has consistently found the aggravating circumstance valid. When trial counsel makes a strategic decision not to raise a nonmeritorious objection, counsel is not to be judged ineffective based on trial strategy. *Barnett v. State,* 776 S.W.2d 928, 929 (Mo.App. 1989).

■ Movant claims that the motion court clearly erred in denying his *Rule 29.15* motion in that the trial judge reviewed a presentence investigation report containing hearsay. In a related point, movant claims that he was denied effective assistance of counsel in that his attorney did not object to the presentence investigation report.

Without addressing the merits, if any, of the point, it is sufficient to note that the claim should have been raised on direct appeal and may not be raised in a post-conviction motion except where fundamental fairness requires otherwise, and; then, only in rare and exceptional circumstances. *Roberts v. State,* 775 S.W.2d at 95. The record reflects no exceptional circumstances. The motion court correctly found that movant failed to specify what information constituted the alleged hearsay and how the alleged hearsay prejudiced movant. Movant fails to satisfy the prejudice prong of *Strickland* as to both claims related to the point.

■ Movant next claims that the death sentence was imposed in violation of due process of law and constitutes cruel and unusual punishment in that movant was not mentally responsible for his actions with respect to culpability and blameworthiness. Movant again refers to the testimony of Dr. O'Connor to show that movant allegedly suffers from intermittent explosive disorder and that not only is movant's

IQ low (eighty-four (84)), but that only 68% of that quotient is effectively useful to movant. Movant contends that this information should have been made available to the jury and that imposition of the death sentence and the absence of such evidence before the jury amounts to cruel and unusual punishment.

Movant's point relates to movant's earlier presented complaint regarding failure to present mitigating evidence and is more precisely an ineffective assistance of counsel claim. The record supports the motion court's finding that counsel's decision not to pursue a defense based on mental disease or defect either as a complete defense, a diminished capacity defense or as a mitigating factor was trial strategy and was based primarily on counsel's lack of knowledge of any mental disease, defect or extreme disturbance from which movant suffered. As previously determined in response to movant's point regarding failure to present mitigating evidence, counsel's decision not to seek a second mental examination was based on reasonable trial strategy following a full report from the Western Missouri Health Center indicating that movant did not suffer from a mental disease or defect under Chapter 552, RSMo. The motion court was not clearly erroneous in denying movant relief on this point.

■ Finally, movant claims that his death sentence was "obtained" in violation of due process of law and constitutes cruel and unusual punishment in that movant's decision not to testify at the guilt phase and penalty phase was not knowingly and voluntarily made. Movant presents his conclusory argument on this point without applicable authority and, thus, preserves nothing for appellate review. *Rule 84.-04(h).* Moreover, movant does not cite to the record in support of his claim nor does he state why the decision was involuntary.

Regardless of movant's failures in this regard, movant's claim is refuted by the records of movant's trial and of the motion hearing. During the evidentiary hearing on the *Rule 29.15* motion, movant testified, in pertinent part, as follows:

[PROSECUTING ATTORNEY]: And then he [movant's counsel] says: I'll explain to you again, did I explain to you before the trial and at the end of the State's case, and I want to explain to you again today, that you have a right to testify and a right not to testify; you understand? And you said yes.

[MOVANT]: Yes.

[PROSECUTING ATTORNEY]: And then he said: And no one can take that right away from you; do you understand that also? And you said yes I do.

[MOVANT]: Yes.

[PROSECUTING ATTORNEY]: And then he says: And do you understand that you can tell this jury and give them any reasons you have as to why you feel they shouldn't give you the death sentence to prevent them from doing it, or you can put on any evidence in mitigation, that is to reduce the possibility of giving them a death sentence; you understand that? And you said yes. Is that correct?

[MOVANT]: Yes.

[PROSECUTING ATTORNEY]: And then he says: And do you have any evidence that you want me to produce? And you said no. Correct?

[MOVANT]: Yes.

\* \* \* \* \* \*

[PROSECUTING ATTORNEY]: And then he says: You understand you can't come back later and say I told Jimmy that I wanted so and so as a witness, or I wanted such and such a piece of evidence and he refused to get it, do you understand that, you can't raise that then? And you said yes.

[MOVANT]: Yes.

[PROSECUTING ATTORNEY]: And then he says: If you want to raise it you must tell me now; do you understand? And you said yes.

[MOVANT]: Yes.

[PROSECUTING ATTORNEY]: And then he said: Now, getting back to your testifying, do you understand that I have told you that you have a right to testify, haven't I not? And you said yes.

[MOVANT]: Yes.

\* \* \* \* \* \*

[PROSECUTING ATTORNEY]: And then finally he says: And you're simply freely and voluntarily, after thinking about and me explaining all your rights and giving you my recommendations you've decided on your own, made your own decision freely and voluntarily that you don't want to testify; is that correct? And you said yes.

[MOVANT]: Yes.

Movant's decision not to testify in both phases of trial was knowing and voluntary.

The judgment is affirmed.

ROBERTSON, RENDLEN, HIGGINS and BILLINGS, JJ., and MAUS, Special Judge, concur.

BLACKMAR, C.J., concurs in separate opinion filed.

HOLSTEIN, J., not participating because not a member of the Court when the case was submitted.

BLACKMAR, Chief Justice, concurring.

I concur. The discussion of the "assaultive" aggravating circumstance shows that the jury was properly instructed on a lawful statutory aggravating circumstance. The "outrageously and wantonly vile" circumstance, therefore, was not essential to the judgment. I write separately only because of the repeated argument about this latter circumstance.

When the Supreme Court of the United States denied certiorari in *State v. Mercer*, 618 S.W.2d 1 (Mo. banc 1981) and *State v. Newlon*, 627 S.W.2d 606 (Mo. banc 1982), I thought that it had retreated from its sharply-divided holding in *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). That Court has often

cautioned that the denial of certiorari does not connote the approval of the decision below, but I thought that it would not countenance a decision which conflicted with its own recent precedent. I therefore concurred in *State v. Preston*, 673 S.W.2d 1 (Mo. banc 1984), on the basis of the unreversed Missouri case, even though I thought that our holding probably conflicted with *Godfrey*. Then in *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), the Supreme Court reaffirmed *Godfrey*, by a substantial majority.

The Eighth Circuit Court of Appeals may not be entirely consistent with its view of the circumstance in issue. *Cf. Mercer v. Armontrout*, 864 F.2d 1429 (8th Cir.1988), and *Newlon v. Armontrout*, 885 F.2d 1328 (8th Cir.1989). *See also Smith v. Armontrout*, 888 F.2d 530 (8th Cir.1989), in which that court denied postconviction relief because the jury, in a way not sanctioned by our traditions, had seen fit to particularize its finding by saying that it had found "torture."

In *State v. Preston*, 673 S.W.2d 1 (Mo. banc 1984), we sought to flesh out the "outrageously and wantonly vile" circumstance, by setting forth some of the factors which would authorize submission of this circumstance to the jury. But we have not required that the *Preston* specifications be presented to the jury in its instructions. The *Preston* formulation speaks only to the trial court. The *Mercer v. Armontrout* court gave attention to the *Preston* guidelines, but I am not sure that this represents the last word on the subject.

One thing is clear. A circumstance which requires a finding of "torture" is sufficient to withstand *Godfrey–Cartwright* scrutiny. If Missouri prosecutors and judges will require a conjunctive finding of torture whenever the questioned circumstance is to be submitted, most postconviction wrangling will be avoided. I cannot imagine a situation in which a jury's finding would be different, depending on whether torture is submitted disjunctively or conjunctively.

With these observations, I concur in the principal opinion.