STATE of Missouri, Respondent,

v.

David GRAYS, Appellant.

David GRAYS, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 59418, 61996.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 22, 1993.

Raymond L. Legg, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Aundreia R. Alexander, Asst. Atty. Gen., Jefferson City, for respondent.

SIMON, Judge.

David Grays, appellant, appeals his jury convictions in the Circuit Court of St. Louis County of three counts of selling a controlled substance, Section 195.020 R.S.Mo. 1986. The trial court sentenced appellant, as a persistent offender, to consecutive terms of ten years imprisonment on Count I, five years imprisonment on Count II, and five years imprisonment on Count III. Appellant also appeals the denial of his post-conviction relief (Rule 29.15) motion.

On appeal, appellant contends the trial court erred in: 1) granting the state's motion to strike the testimony of defense witness, Raymond Whitlock, and ordering the jury to disregard his testimony; and 2) granting the state's motion in limine prohibiting defense counsel from making any reference to Whitlock's testimony wherein he invoked his constitutional privilege against self-incrimination. Appellant argues that such rulings were violative of his fifth, sixth, and fourteenth amendment rights to a fair trial by an impartial jury. Additionally, appellant contends the trial court clearly erred in denying appellant's post-conviction relief motion because the record leaves a firm impression that appellant was denied due process of law and effective assistance of counsel. We affirm.

Reviewing the evidence in a light most favorable to the verdict, the facts are as follows. Detectives Darryl Relerford and Rick Morris worked for the Municipal Enforcement Group (MEG), a drug enforce-

ment unit for St. Louis County. MEG informant, Raymond Whitlock, arranged for three separate drug transactions in which appellant sold drugs to Detective Relerford.

The first transaction took place on April 26, 1988 at approximately 3:38 p.m. in the 6500 block of Enright in University City. Appellant and Whitlock drove up in appellant's car and Detective Relerford got in the back seat. After a brief conversation, appellant sold Detective Relerford a "teenage" (street name for 1.75 grams of cocaine) for $150. Detective Morris surveilled in a nearby parked car but could not see the actual transaction.

On June 1, 1988, at approximately 6:30 p.m., Detectives Relerford and Morris waited at the Blueberry Hill Bar and Grill in the 6500 block of Delmar. As previously arranged, Whitlock went into the bar to get Detective Relerford. Whitlock and Detective Relerford left the bar and Detective Relerford crossed the street to appellant's car. Detective Relerford entered appellant's front seat and appellant sold Detective Relerford another "teenage" of cocaine for $150. Detective Morris surveilled just outside the bar.

Finally, on June 29, 1988 at approximately 4:15 p.m., Detectives Relerford and Morris waited again at the Blueberry Hill Bar and Grill where Whitlock entered to get Detective Relerford. Detective Relerford and Whitlock left the bar and crossed the street to appellant's car. Detective Relerford got in the back seat of appellant's car where appellant sold him an "eight-ball" (street term for 3.5 grams of cocaine) for $300. Once again, Detective Morris surveilled nearby.

After each transaction, Detectives Relerford and Morris took the white substance back to the MEG headquarters where they packaged and sealed the evidence. Tests conducted at the St. Louis County Lab showed that all three packages contained cocaine.

At the close of the state's evidence, appellant's counsel made an opening statement which implied Whitlock would testify and possibly implicate himself. The prose-cutor, at sidebar, asserted that if Whitlock intended to testify, he should talk to an attorney. The judge agreed and sent for a public defender to advise Whitlock. When called to testify, Whitlock stated his name, address, age and answered general questions about familiarity with appellant. However, when asked about details of the drug transactions, Whitlock exercised his fifth amendment privilege against self-incrimination. When Whitlock told the court he intended to claim his fifth amendment rights to all further questions, the court excused him.

The court sustained the state's motion to strike Whitlock's testimony and to instruct the jury not to draw any conclusion or inference, favorable or unfavorable to either party. The court also sustained the state's motion in limine prohibiting counsel from referring to Whitlock's refusal to testify.

Appellant testified and admitted giving Whitlock a ride to the locations of the various drug transactions but denied selling the drugs or having any knowledge of the drug transactions.

The jury convicted appellant on all three counts and the trial court sentenced him to consecutive terms of ten years imprisonment for Count I, five years imprisonment for Count II, and five years imprisonment for Count III. Appellant filed a pro se motion for post-conviction relief and later his attorney filed an amended motion. Following an evidentiary hearing, the motion court denied the motion.

Appellant's first point is that the trial court erred in granting the state's motion to strike the testimony of defense witness, Raymond Whitlock, and ordering the jury to disregard his testimony. Appellant also contends that the trial court erred in granting the state's motion in limine prohibiting defense counsel from making any reference to, or requesting the jury to draw any inference from Whitlock's testimony in which he invoked his constitutional privilege against self-incrimination. Appellant claims any reference made to Whitlock's refusal to testify would have been offered to impeach Detective Relerford's testimony

and not for the purpose of inferring appellant's innocence. Appellant argues that such rulings were violative of his fifth, sixth, and fourteenth amendment rights to a fair trial by an impartial jury. Further, appellant argues that the state had a duty to see that justice was done and not withhold potentially exculpatory evidence by asserting that Whitlock consult with counsel prior to making potentially incriminating statements. As a result, appellant contends the cumulative effect of the state's actions and the court's rulings distorted the fact-finding process.

Essentially, the issues are: 1) whether the prosecution's suggestion that Whitlock consult with counsel prior to possible self-incrimination was an obstruction of justice and a distortion of the fact-finding process; and 2) whether the trial court erred in calling for a public defender to advise Whitlock of his fifth amendment rights and subsequently allowing him to exercise those rights.

 We agree with appellant that, in addition to representing the state's case, the prosecution must see that justice is done and that the accused gets a fair trial. *State v. Whitman,* 788 S.W.2d 328, 335 (Mo.App.1990). However, we disagree that the prosecution's actions in this case constitute prosecutorial misconduct. There is no record indicating that the prosecutor intimidated or threatened Whitlock. In *State v. Brown,* 543 S.W.2d 56, 59 (Mo.App.1976), the prosecutor, after threatening a warrant for the witness' arrest, asked if the witness still wanted to testify. There we held that where the prosecutor intimidates or threatens a witness to dissuade the witness from testifying, the defendant is improperly denied his sixth amendment right to present witnesses in his own defense. *Id.* at 59. However, absent such intimidation or threats, no impropriety exists. *State v. Drewel* 835 S.W.2d 494, 497 (Mo.App.1992).

The state, on the other hand, argues that the prosecutor had a responsibility to ensure that Whitlock was aware of his rights. Our Supreme Court has found such a duty in *State v. Miller,* 485 S.W.2d 435, 441 (Mo.1972), where the Court upheld a prosecutor's sustained objection of defense counsel's question asking whether the witness was a "practicing homosexual". The Court stated homosexuality was a statutory crime and therefore, the prosecutor had a duty to object to the question and request that the court advise the witness of his right against self-incrimination. *Id.*

Additionally, Missouri Supreme Court Rule 4.3 and DR 7–104(A)(2) of the ABA Model Code of Professional Responsibility (1983) state that a "lawyer should not give advice to an unrepresented person other than the advice to obtain counsel." While this does not specifically impose a duty upon attorneys to advise a witness likely to incriminate himself of his rights, it does imply that an unrepresented person should be advised to obtain counsel.

The ABA Standards of Criminal Justice specifically address this issue and while Missouri has not formally adopted these standards, some jurisdictions have, and a review of these standards is helpful. Standard 3–3.2(b) of the ABA Standards for Criminal Justice (1980) provides as follows:

"Whenever a prosecutor knows or has reason to believe that the conduct of a witness to be interviewed may be the subject of a criminal prosecution, the prosecutor or the prosecutor's investigator should advise the witness concerning possible self-incrimination and the possible need for counsel."

Courts have looked to ABA Standard 3–3.2(b) to determine if a prosecutor has a duty to advise a witness concerning possible self-incrimination and how such advice should be given. See *U.S. v. Smith,* 478 F.2d 976 (D.C.Cir.1973) (Prosecutor's warning as to possible exposure to criminal prosecution was a threat and rather than intimidate the witness, the prosecutor should have suggested that the court advise the witness of his rights). See also *Holbert v. U.S.,* 513 A.2d 825 (D.C.App. 1986) (no impropriety found when prosecutor asked court to advise defense witness of fifth amendment rights against self-incrimination).

Here, appellant contends that he was severely prejudiced because Whitlock was his

only witness and in allowing Whitlock to refuse to testify, he was denied his constitutional right to offer testimony of witnesses in his favor. Appellant relies on *State v. Hayes*, 785 S.W.2d 661, 663 (Mo.App.1990) which states that corroborative testimony by a single witness should not be discounted as merely cumulative since a defendant's own testimony is always received with doubt. In *Hayes*, the sole issue on appeal was appellant's alleged ineffective assistance of counsel. Unlike the case before us now, the court in *Hayes* did not address the conflict between a criminal defendant's right to a fair trial and a witness' right to refuse to answer an incriminating question. In addition, the rule enunciated in *Hayes* presupposes that the omitted testimony was admissible.

■ Here, Whitlock exercised his privilege and refused to answer all material questions to avoid self-incrimination. While we agree that the constitution guarantees criminal defendants the right to offer testimony of witnesses in his favor, a validly-invoked fifth amendment privilege of the witness prevails whenever these two rights conflict. *U.S. v. Roberts*, 503 F.2d 598 (9th Cir.1974) *cert. denied* 419 U.S. 1113, 95 S.Ct. 791, 42 L.Ed.2d 811 (1975).

■ We now address whether the trial court erred in: 1) ordering Whitlock's testimony stricken; 2) instructing the jury not to draw any inferences from his refusal to testify; and 3) prohibiting counsel from making any references to his refusal to testify. Appellant claims any reference to the refusal to testify would have been offered to impeach Detective Relerford's testimony, and not to infer appellant's innocence.

■ Appellant concedes to the well established rule that once a witness refuses to answer a question because of possible incrimination, no inferences may be made, whether favorable or unfavorable to either the defendant or the prosecution. *State v. Wright*, 571 S.W.2d 734, 735 (Mo.App. 1978). This rule prohibits the prosecution from calling a witness who acted in accord with the defendant and then using the wit-

ness' refusal to testify to infer that the defendant is guilty. *Id.*

■ Similarly, a defendant should not be permitted to call a witness and use that witness' refusal to testify to infer the witness' guilt and thus defendant's innocence. *State v. Hatter*, 700 S.W.2d 138, 139 (Mo. App.1985).

In *State v. Loggins*, 698 S.W.2d 915 (Mo. App.1985), we found no reason to permit a witness to take the stand solely to assert the privilege before the jury since "the probability of prejudice or impermissible inference would outweigh any useful purpose." *Id.* at 918.

Some federal courts have further reasoned that a jury may likely view a witness' invocation of his fifth amendment protection as "high courtroom drama and a focus of ineradicable interest, when in fact its probative force is weak and it cannot be tested by cross-examination." *U.S. v. Bowman*, 636 F.2d 1003, 1014 (5th Cir.1981); *Bowles v. U.S.*, 439 F.2d 536, 541–542 (D.C.App.1970). Based on these reasons, appellant's intended purpose for the reference is irrelevant.

■ Further, our Supreme Court has held that when the trial court knows in advance that a witness will exercise a privilege, the decision whether to allow the witness to be called in the jury's presence rests in the sound discretion of the trial judge. *State v. Sidebottom*, 753 S.W.2d 915, 922 (Mo.1988). However, if there is a reasonable chance that the witness will provide some additional non-privileged testimony, the court may allow the witness to testify. *Id.*

■ Here, in his opening statement, defense counsel implied that Whitlock would testify and incriminate himself. Since there was a possibility that Whitlock would testify to additional probative information, the trial judge allowed Whitlock to be called. However, after speaking with a public defender, Whitlock exercised his Fifth Amendment right and refused to answer all relevant questions. The probative value of Whitlock's testimony was thus diminished and, in accord with *Wright, Hat-*

*ter* and *Loggins,* the trial judge ordered Whitlock's testimony stricken and instructed that no inferences be drawn from his refusal to testify. Similarly, the trial judge prohibited counsel from making any further references to Whitlock's refusal to testify.

In support of appellant's contention that the facts and circumstances of his case were such that references and inferences should have been allowed, he relies on *State v. Wright,* 582 S.W.2d 275 (Mo. banc 1979) and *Namet v. U.S.,* 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963). Appellant claims that *Wright* is at "one end of the spectrum" while *Namet* is at the opposite end. In *Wright* our Supreme Court held that the prosecutor could not call a witness solely to infer the defendant's guilt from the witness' refusal to testify where there was no doubt that the witness would refuse to answer all material questions. *State v. Wright,* 582 S.W.2d at 283.

Conversely, in *Namet,* the United States Supreme Court allowed references to the testimony of two witnesses who invoked their fifth amendment privilege in response to some questions. *Namet v. U.S.,* 373 U.S. at 185, 83 S.Ct. at 1154. However, the witnesses in *Namet* offered additional non-privileged testimony and only refused to answer a small number of questions. *Id.* Therefore the Court held that the inference was properly drawn from the non-privileged testimony coupled with other evidence the state had offered. *Id.*

Here, Whitlock offered no non-privileged testimony except stating his name, address, age, and familiarity with appellant. Therefore, this case falls much closer to the *Wright* "end of the spectrum".

In accord with the principles enunciated herein, the trial court did not abuse its discretion by striking Whitlock's testimony and prohibiting all inferences or references to his refusal to testify. Point denied.

■ Appellant's second point is that the trial court clearly erred in denying appellant's post conviction relief motion because the record leaves a firm impression that appellant was denied due process of law and effective assistance of counsel.

■ Our review of the trial court's decision is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous and that a full review of the record leaves this court with the definite and firm impression that a mistake has been made. Rule 29.15(j); *Sidebottom v. State,* 781 S.W.2d 791, 794–795 (Mo.banc 1989).

■ To prevail on a claim of ineffective assistance of counsel, a movant must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To prove deficient performance a movant must show that counsel's acts or omissions were outside the range of professionally competent assistance. *Id.* at 690, 104 S.Ct. at 2065. To do this movant must overcome the presumption that counsel's challenged acts or omissions were sound trial strategy. *Sidebottom v. State,* 781 S.W.2d at 795. To show prejudice, movant must show that but for the errors by counsel, the jury would have had a reasonable doubt respecting his guilt. *Id.* at 796. If movant fails to show either the deficient performance component or the prejudice component, this court need not address the other component. *Id.*

In regards to the deficient performance component, appellant alleges that trial counsel failed to visit the scene of the alleged drug sales near the Blueberry Hill Bar and Grill to determine that appellant could not have parked as testified by Detectives Relerford and Morris. Appellant alleges that trial counsel should have taken photographs of the "No Parking" signs at the scene as evidence to impeach the detectives' testimony as to the ability to park as both detectives claimed appellant parked.

At appellant's post-conviction evidentiary hearing, appellant's trial counsel testified that the whole issue was a matter of trial strategy. He further testified that appellant's defense was that he did not sell the drugs. Therefore, the issue of whether appellant could have parked at a particular

location was not significant to the overall defense. Additionally, he believed that the parking issue was adequately covered during the trial by appellant's extensive testimony and the detectives' testimonies.

We defer to the motion court's opportunity to hear testimony of each side and determine credibility. Here, the motion court found that trial counsel's decision not to visit the site and photograph the "No Parking" sign was entirely a matter of trial strategy.

Further, we have previously held that when defense counsel fails to offer evidence, used merely to impeach the state's witnesses, the movant is not entitled to relief. *Allbritton v. State*, 747 S.W.2d 687, 689 (Mo.App.1988).

Appellant failed to overcome the presumption that counsel's challenged acts or omissions were sound trial strategy. Therefore, since appellant has failed to show the deficient performance component, we will not address the prejudice component. Point denied.

Judgment affirmed.

CARL R. GAERTNER, P.J., and CRANE, J., concur.