**STATE of Missouri, Plaintiff/Respondent,**

v.

**Dewayne HUBERT, Defendant/Appellant.**

**Dewayne HUBERT, Movant,**

v.

**STATE of Missouri, Respondent.**

**Nos. 65540, 67561.**

Missouri Court of Appeals,
Eastern District,
Division Four.

April 9, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court May 15, 1996.

Application to Transfer Denied
June 25, 1996.

Dave Hemingway, Asst. Public Defender, St. Louis, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Joanne E. Joiner, Asst. Atty. Gen., Jefferson City, for Respondent.

PUDLOWSKI, Judge.

This is an appeal from a conviction for rape of a six year old child pursuant to § 566.030 RSMo 1994. Dewayne Hubert (appellant) raises four points on appeal. He alleges error by the trial court in denying his *Batson* challenge; error by this court in failing to remand the case for a new trial in light of newly discovered evidence; and two errors by the trial court in denying his Rule 29.15

motion for ineffective assistance of counsel. We affirm.

In early 1993, appellant was living with EC's mother (mother), the victim, six year old EC, and two other children in a residence in St. Louis. On April 15, 1993, appellant took mother to work at 12:30 a.m. On the way they had an argument. Appellant then returned home and at about 2 a.m. the two talked on the phone and patched things up. At 3 a.m. mother called again and her older daughter answered the phone. She told her mother that appellant woke her up to watch the younger children because EC was bleeding from her private parts and he had to go pick up mother from work. EC was soaking in the bath tub at the time. When mother and appellant arrived back home, EC was still in the tub and was bleeding profusely. Mother asked EC what happened and she just nodded like she did not know. Mother asked the child if she had been playing with herself or stuck herself with something. The child shook her head "No." Appellant and mother took the child to the hospital. At the hospital, out of the presence of appellant, mother again asked the child what happened. She asked if her older sister was messing with her. The child said "No." She then asked if appellant had messed with her and the child nodded her head "yes." Mother asked EC if she was sure and the child nodded "yes" again.

The child proceeded to tell a number of different individuals at the hospital what had occurred that evening. EC told a social worker that appellant did the "Hootchie-cootchie" to her. She explained that meant appellant put his "privacy" inside of her "privacy." When asked what her privacy was, she pointed to her vagina. The child said appellant hurt her and made her bleed. The social worker asked EC if appellant did anything to his privacy before he hurt her with it. She said appellant put yellow grease on it. Mother testified she kept yellow lotion in her room. EC said appellant was pumping on her for a long time.

The next morning, a detective interviewed appellant at his house and he showed the detective the clothes EC was wearing, the blood stained water in the tub and the blood stains on the child's sheets. Appellant was arrested at 10:00 a.m. on April 15 1993, and agreed to make a statement. Appellant's first statement revealed the following: At around midnight on April 15, 1993, appellant drove mother to work and they had an argument. He dropped her off and went back home. At 1:00 a.m. he decided to go talk to mother and straighten things out. He stopped along the way to put air in his tires and ran into a friend. They decided to get a beer. When he arrived back home at 3:00 a.m. he watched television. Shortly thereafter, EC came upstairs bleeding. Appellant gave the child a bath to try to stop the bleeding. When the bleeding got worse, he panicked and woke up the older child and left to get mother from work. He then took EC to the hospital.

After his initial statement, the police told appellant EC claimed appellant sexually assaulted her. He reaffirmed his version of the facts but the detective said he did not believe him. After a few minutes, appellant began crying and admitted to the crime. Appellant said he went down to the child's room got into bed with her and put his penis in her vagina. Appellant then agreed to make an audiotaped statement which was played for the jury.

The medical testimony revealed EC had a laceration which extended from the back wall of her vagina through the hymen and all the way down within a centimeter of the anal opening. A laceration is a sharp cut or tear. The laceration appeared to be caused by a blunt penetrating force and was consistent with penile penetration. The doctor testified that a prepubertal child's vagina is not elastic and, therefore, tears if something enters it that is larger than the opening itself.

Appellant testified at the trial and called two witnesses in his defense. His parents testified he is not the kind of man who would commit such an act. He then testified that he did not rape the child. Appellant was found guilty of rape and sentenced to forty-five years imprisonment.

Appellant filed a pro se motion for post-conviction relief pursuant to Supreme Court Rule 29.15. Counsel was appointed. After

an evidentiary hearing, the motion was denied. This appeal followed.

■ In point one, appellant argues the trial court erred in denying his *Batson* challenge to the prosecution's preemptory strike of a black venireperson. We find no error. When a *Batson* challenge is made the issue of discrimination is a finding of fact which is reviewed under a clearly erroneous standard. *State v. Antwine,* 743 S.W.2d 51, 66 (Mo. banc 1987). A finding is clearly erroneous when, although there is evidence to support it, the evidence on the whole leaves the reviewing court with the definite and firm conviction a mistake has been made. *Id.* The procedure for *Batson* challenges enunciated by the Missouri Supreme Court involves three components. *State v. Parker,* 836 S.W.2d 930, 939 (Mo. banc 1992). The defendant must raise a *Batson* challenge and identify the venireperson as belonging to a cognizable racial group. *Id.* The trial court will then require the state to come forward with a reasonably specific and clear race-neutral explanation for the strike. *Id.* Assuming the state articulates an acceptable reason for the strike, the defendant will then need to show that the state's reasons were merely pretextual and racially motivated.[1] *Id.*

■ Appellant raised an objection to the prosecution's strike of a black venireperson. The state then came forward with specific race neutral reasons for the strike. The state explained it struck the woman because she had no children, has never been the victim of a crime and has no prior jury experience. The prosecutor stated because the case involved a child, experience with children would be helpful to the state's case. The judge also noted the woman's answers

were very soft and that she did not seem very interested in what was going on in the case. The burden then shifted back to appellant and he merely stated the state's reasons were pretextual. He presented no other evidence or argument. The court denied the motion.

Appellant on appeal now argues the black venireperson was similarly situated to two white jurors who were retained. Appellant also alleges the fact that the black juror had testified for the state as a witness in a murder trial made her a more favorable choice for the state than one of the similarly situated white jurors who stated she thought a life sentence was a long time for the crime of rape of a child.[2]

■ These issues were not raised before the trial court and, therefore, we decline to consider them in reviewing whether the trial court erred in deciding if appellant carried his burden of proof. Once the state comes forth with a neutral explanation for the strike, the defendant has the burden of demonstrating the proffered reasons are pretextual. *State v. Hudson,* 822 S.W.2d 477 (Mo. App.E.D.1991). Appellant did not make these arguments to the trial court and, therefore; failed to carry his burden. Furthermore, there is no way for this court to verify appellant's allegations on appeal. The record does not indicate whether the two white jurors had children, it only reveals that the struck juror did not.[3] There were no other circumstances that indicated the strike was racially motivated. On this record, we find the trial court's factual determination is not clearly erroneous. Point denied.

In point two, appellant argues he is entitled to a new trial based on new evidence discovered after the time for post trial mo-

---

1. In determining whether the defendant has carried his burden the trial court should take a variety of factors into account. The chief consideration is the prosecutor's reasons in light of the totality of the facts and circumstances surrounding the case. *Id.* Any facts that detract from or lend credence to the prosecutor's reasons are relevant. *Id.* The existence of similarly situated white jurors who were not struck is also probative. The degree of logical relevance between the proffered reasons and kind of crime, the nature of the evidence and the potential punishment is also important. *Id.* The demeanor of the prosecutor and the venire person should be considered. *Id.* The court's past experiences

with the prosecutor, the conditions prevailing in the community, as well as the race of the defendant and the victim are relevant. *Id.*

2. On further questioning, the white juror stated she could consider life as a possible sentence after hearing the evidence.

3. The question posed on voir dire asked if the jurors had children under age twenty-five. The three jurors at issue did not have children under twenty-five but the record does not reveal if the two white jurors had children over twenty-five.

tions. Appellant, in affidavits from mother and defense counsel, claims EC recanted her accusations against appellant months after the trial and claims EC told mother the injuries occurred when she cut herself with a piece of broken mirror. Appellant raised this issue on motion to this court asking for a remand and the motion was denied. Therefore, we decline to consider appellant's argument, again. Point two is denied.

In point three, appellant argues the trial court erred in denying his Rule 29.15 motion of ineffective assistance of counsel for failure to call two witnesses. We disagree. In order to prevail on a claim of ineffective assistance of counsel for failure to call a witness, movant must prove: (1) the witness could be located through reasonable investigation; (2) the witness would testify; and (3) the witness would provide a viable defense. *Harry v. State*, 800 S.W.2d 111, 115 (Mo.App. E.D.1990). Appellant alleges he gave trial counsel the names of his two sisters and told him they would testify that at the hospital, mother and EC told them appellant did nothing to EC.[4] This testimony is merely a prior inconsistent statement. It does not establish a defense. Therefore, appellant was not entitled to prevail on his Rule 29.15 motion. Point three is denied.

In point four, appellant argues the trial court erred in denying his Rule 29.15 motion of ineffective assistance of counsel because his counsel failed to strike venireperson Moore–Washington (Washington). We find no error. In order to prevail on a claim of ineffective assistance of counsel, a movant must establish by a preponderance of the evidence: (1) his attorney's performance was deficient such that he failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances; and (2) the deficient performance prejudiced appellant. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). Movant must satisfy both prongs to be entitled to relief. *Id.* Review of the motion court's denial of post-conviction

relief is limited to a determination of whether the findings and conclusions are clearly erroneous. *Sidebottom v. State*, 781 S.W.2d 791, 795 (Mo. banc 1989). Trial counsel is presumed competent and movant must overcome the presumption that counsel's challenged acts or omissions were sound trial strategy. Washington had a sister who was sexually abused. As a student assistant she counseled students who had been sexually abused.[5] The venireperson testified that she could evaluate the facts of the case without consideration of the twenty year old incident concerning her sister. She unequivocally testified she would not let her work experiences affect her decision if she were retained on the jury. She was not the victim of sexual abuse and in her profession she only took information from parents regarding her students. Sometimes the child's history included sexual abuse. She did not investigate sexual abuse cases. She also assured defense counsel her decision would be based on the evidence only. Defense counsel stated appellant did not tell him he did not want this particular venireperson on the jury. Defense counsel also stated he deliberately kept Washington because she was black and he wanted racial balance on the jury. Washington's affirmation of impartiality and racial balance established a reasonable basis for counsel's decision to retain her. Consequently, appellant has not overcome the presumption of competence. In addition, appellant has not shown Washington was biased against him and, therefore, has not shown prejudice. Appellant has not carried his burden of showing incompetence and has not shown prejudice. Hence, the trial court's denial of the motion was not clearly erroneous. Appellant's point four is denied. The judgment is affirmed.

AHRENS, P.J., and SIMON, J., concur.

---

4. Defense counsel denied appellant told him about his two sisters, who were both present throughout the trial but never mentioned these facts to counsel or anyone else.

5. Appellant claims Washington is a child abuse counselor. She was a teacher and now assists students who are having academic and behavior problems. Sexual abuse is sometimes a cause of the problems Washington assists the children with.