# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 98-1605

———————

Jahn Henri Parker,       *
     *
         Appellant,      *
     *    Appeal from the United States
       v.      *    District Court for the
     *    Western District of Missouri.
Michael Bowersox,      *
     *
         Appellee.      *

———————

Submitted: January 13, 1999

Filed: August 10, 1999

———————

Before BOWMAN,[1] Chief Judge, WOLLMAN,[2] and MURPHY, Circuit Judges.

———————

WOLLMAN, Chief Judge.

Jahn Henri Parker was convicted in Missouri state court for the murder of his ex-girlfriend Elizabeth Loesch and was sentenced to death. Parker appeals from the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. §

———————

[1]The Honorable Pasco M. Bowman stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on April 23, 1999.

[2]Roger L. Wollman became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 24, 1999.

2254. We affirm that portion of the district court's order which denies relief on Parker's challenge to his conviction. We reverse that portion of the order which denies relief on Parker's challenge to the sentence, and we remand the case with directions to issue an appropriate writ of habeas corpus.

**I.**

Parker and Loesch had a tumultuous relationship, which began in late 1987. On March 30, 1990, Loesch reported to Boone County, Missouri, police that Parker had assaulted her three days earlier. At the time, Parker was on probation for an unrelated third-degree assault conviction. On May 3, Robert Aulgur, assistant prosecuting attorney for Boone County, filed a new third-degree assault charge and a motion to revoke Parker's probation based on the March 27 incident.

Parker, with the assistance of his attorney, Betty Wilson, reached a plea agreement with Aulgur that covered both the probation violation and the new assault charges. In a letter to Aulgur dated August 1, 1990, Wilson stated that under the plea agreement Parker would admit to the March 27 assault and receive concurrent 90-day sentences for the probation violation and new assault. According to Wilson, Parker's guilty plea at the probation violation hearing scheduled for August 16, 1990, would dispose of the probation violation and new assault charges. Wilson forwarded a copy of the plea agreement to Parker and informed him that Loesch was no longer a potential witness in the proceedings.

Sometime after midnight on August 16, the day of the hearing, Alva Lewis dropped Parker off at Loesch's house. Lewis testified that Parker had been drinking and had obtained a small-caliber revolver. He also stated that he heard Parker say, "I'm going to kill the bitch," as he walked away from Lewis's vehicle. Another witness, Tom Beary, testified that he saw a man matching Parker's description enter the passenger side of Loesch's vehicle at approximately 2:00 a.m. and saw the vehicle

drive off shortly thereafter. Loesch was found in her car at 7:00 a.m. that day, dead as a result of four gunshot wounds.

At 9:00 a.m., before Boone County police learned of Parker's involvement in Loesch's death, Parker appeared at the probation violation hearing. He admitted that he violated probation by assaulting Loesch on March 27. Consistent with the plea agreement, the court imposed a 90-day sentence. The same day, the county dismissed the new assault charge.

Later on August 16, investigators learned from Lisa Anglo, Parker's girlfriend, that Parker had told her that he tried to shoot Loesch but was unsure if he had succeeded. In addition, Parker had left his clothes and boots in Anglo's garage and asked her to dispose of them. Investigators discovered the gun that fired the fatal shots in one of Parker's boots when they searched the garage.

Parker was interrogated about the murder the next day. He admitted that he was at least partially at fault for Loesch's death. He also stated, "Well, you know those are my prints on the gun . . . but you're never going to know what happened in that car."

A jury convicted Parker of first-degree murder in February of 1992. Finding that Parker murdered Loesch because she was a potential witness in the new assault case, the jury imposed the death sentence. Parker's direct appeal and petition for post-conviction relief under Missouri Supreme Court Rule 29.15 were unsuccessful. See State v. Parker, 886 S.W.2d 908 (Mo. 1994) (en banc). The district court denied his federal habeas petition in December of 1997, and this appeal followed. Although Parker was granted a certificate of appealability on seven issues, we find it necessary to address only several of them.

## II. Guilt Phase Issues

### A. Interrogation

Parker contends that the police violated his Sixth Amendment right to counsel when they interrogated him about Loesch's murder without his attorney present. He argues that inculpatory statements he made during the interrogation should thus have been suppressed. We disagree.

Although Parker had invoked his right to counsel for the probation violation and assault charges, the right to counsel had not attached with respect to investigation of the murder because no charges had been filed. See Davis v. United States, 512 U.S. 452, 456 (1994) (describing when the right attaches). The Sixth Amendment right to counsel is offense-specific. See McNeil v. Wisconsin, 501 U.S. 171, 175 (1991). "It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced . . . ." Id. Nor were the March 1990 and August 1990 charges so "inextricably intertwined" that Parker implicitly invoked his right to counsel for the murder charge by invoking it for the probation violation and assault charges. See Hellum v. Warden, United States Penitentiary–Leavenworth, 28 F.3d 903, 909 (8th Cir. 1994) (recognizing that a narrow exception to the McNeil rule may apply to prosecutions arising from the same events). Accordingly, no Sixth Amendment violation occurred when the police interrogated Parker about Loesch's murder, and thus his inculpatory statements were properly admitted.

### B. Ineffective Assistance of Counsel

Parker argues that he received ineffective assistance of counsel at the guilt phase. According to Parker, counsel failed to: (1) prepare for closing argument; (2) properly examine the State's witnesses; (3) present a theory of the defense; and (4) object to the intoxication instruction.

Ineffective assistance of counsel claims present mixed questions of law and fact, which we review de novo. See Parkus v. Bowersox, 157 F.3d 1136, 1138 (8th Cir. 1998), cert denied, 119 S.Ct. 2410 (1999). The district court's factual findings, however, are reviewed for clear error. Id. at 1138-39 (citing Laws v. Armontrout, 863 F.2d 1377, 1381 (8th Cir. 1988) (en banc)). Specific factual findings by state courts are generally presumed correct. See Laws, 863 F.2d at 1381.

Ineffective assistance is measured by the now familiar two-part standard of Strickland v. Washington, 466 U.S. 668 (1984).

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687. A court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

First, Parker claims that counsel's closing argument was "rambling and incoherent." As the Supreme Court has stated, however, the guarantee of effective assistance of counsel is not intended to increase the quality of legal representation but to "ensure that criminal defendants receive a fair trial." Id. at 689. Although his closing argument may not have been the most succinct or tightly structured, counsel raised a number of points in Parker's defense. As the Missouri Supreme Court found, counsel challenged the credibility of State witnesses, argued that the State had not

established deliberation on Parker's part, and questioned the validity of Parker's inculpatory statements to the police. Accordingly, we cannot say that the closing argument deprived Parker of a fair trial. See Sloan v. Delo, 54 F.3d 1371, 1384 (8th Cir. 1995) (rejecting an ineffective assistance claim that was premised on counsel's "incoherent" closing argument).

Second, Parker argues that counsel failed to properly cross-examine certain witnesses. Because he failed to raise this claim with respect to witness Tom Beary in his state petition for post-conviction relief, however, that part of the claim is procedurally defaulted. With respect to witness Alva Lewis, the district court found that counsel elicited testimony that Lewis had been drinking, called his credibility into question through impeachment, and pointed out weaknesses in his story. We find no error in these findings, and thus Parker is not entitled to relief on this claim.

Third, Parker contends that counsel failed to present a "theory of the defense." Because it was not properly raised in state court, this claim is procedurally barred. In any event, the contention is without merit, for there is no requirement that counsel present a formal theory of the defense. Parker relies on cases in which counsel was found ineffective for failing to present obvious defenses. See Hill v. Lockhart, 28 F.3d 832, 842 (8th Cir. 1994); Chambers v. Armontrout, 907 F.2d 825, 831 (8th Cir. 1990) (en banc). Specifically, he asserts that counsel should have argued that he acted in the heat of passion. Counsel had valid strategic reasons for not making this argument, however. There was little evidence suggesting that Parker acted in the heat of passion. Furthermore, such an argument would have opened the door for the introduction of damaging evidence that Parker had previously stalked Loesch. Thus, it was reasonable for counsel to focus on challenging the State's proof of deliberation and the credibility of the State's witnesses.

Finally, Parker contends that it was ineffective assistance for counsel not to object to the following instruction on voluntary intoxication:

In determining the defendant's guilt or innocence, you are instructed that an intoxicated condition from alcohol will not relieve a person of responsibility for his conduct.

Instruction No. 6, Appellant's Appx. at 292. Parker claims that counsel should have objected because the Missouri Supreme Court later determined that this instruction improperly suggested to the jury that an intoxicated defendant could be convicted of first-degree murder without regard to mental state. See State v. Erwin, 848 S.W.2d 476, 483 (Mo. 1993) (en banc). The court limited the holding in Erwin to subsequent cases, however. It held that the instruction correctly stated the law. Id. In effect, then, Parker argues that counsel erred by failing to anticipate a change in the law. We have repeatedly held that such a failure does not constitute ineffective assistance. See Horne v. Trickey, 895 F.2d 497, 500 (8th Cir. 1990); Johnson v. Armontrout, 923 F.2d 107, 108 (8th Cir. 1991); Ruff v. Armontrout, 77 F.3d 265, 268 (8th Cir. 1996).

In sum, any deficiencies in counsel's performance at the guilt phase did not rise to the level of ineffective assistance as defined in Strickland.

### III.  Penalty Phase Issues

### A.  Ineffective Assistance of Counsel

Under Missouri law, the jury must unanimously find at least one statutory aggravating circumstance to impose the death penalty. See Sloan, 54 F.3d at 1385 (citing Mo. Rev. Stat. § 565.030.4); Six v. Delo, 94 F.3d 469, 475 (8th Cir. 1996). Here, the State presented two statutory aggravating factors: (1) that Parker murdered Loesch because she was a potential witness in the probation violation case; and (2) that Parker murdered Loesch because she was a potential witness in the assault case. See Instruction No. 15, Appellant's Appx. at 293. The jury found the second aggravating factor to exist, but not the first.

Parker contends that penalty-phase counsel[3] rendered ineffective assistance by failing to call attorney Wilson, who would have testified that she informed Parker well before August 16, 1990, that Loesch was no longer a potential witness in the probation violation and assault cases. The State responds that counsel did not call Wilson because she could have revealed privileged information and because her testimony would have been cumulative.

We apply the same standard of attorney performance in both capital and noncapital cases. See Pickens v. Lockhart, 714 F.2d 1455, 1460 n.4 (8th Cir. 1983). Counsel must act with "the customary skills and diligence that a reasonably competent attorney would exhibit under similar circumstances." Starr v. Lockhart, 23 F.3d 1280, 1284 (8th Cir. 1994) (quoting Hayes v. Lockhart, 766 F.2d 1247, 1251 (8th Cir. 1985)). Thus, we must consider counsel's conduct in the context of a capital sentencing proceeding. See Starr, 23 F.3d at 1284-85; Pickens, 714 F.2d at 1460 n.4. The primary duties of counsel at such a proceeding are to "neutralize the aggravating circumstances advanced by the state" and "present mitigating evidence." Starr, 23 F.3d at 1285. It was therefore critical for Parker's counsel to show that Parker did not murder Loesch because she was a potential witness.

To prove the two aggravating circumstances, the State offered testimony from prosecuting attorney Aulgur that the probation violation and assault cases were pending when Loesch was killed. On direct examination, Aulgur did not mention the existence of the plea agreement. See Trial Tr. at 1503-07. He testified that both the probation violation and assault cases were pending when Loesch was murdered. Further, he stated that Parker appeared at the probation violation hearing on August 16, 1990, confessed to his probation violation, and "admitted he had assaulted Beth Loesch as charged back on March the 27th of 1990." Id. at 1505-06. Aulgur testified that the

---

[3]Parker had separate counsel for the guilt and penalty phases of the trial.

court imposed a 90-day sentence for the probation violation, but did not state that he (Aulgur) dismissed the new assault charge the same day based on Parker's plea.

On cross-examination, the whole of Aulgur's testimony about the plea agreement is contained in the following exchange:

> Q. Mr. Aulgur, just so we're clear, there was a plea negotiation between you and Mr. Parker's attorney. And – is that right?
> A. In which case?
> Q. Regarding the new assault.
> A. Yes.
> Q. In exchange for a confession or admission of violating probation, the arrangements were that he was to go into 90 days in jail. True?
> A. On the probation violation. And then he would plead guilty to the original assault, receive a 90-day jail sentence, be placed on two years supervised probation, with conditions of counseling, not to consume alcohol, and not to have any further contact with the victim.
> Q. Okay. And on August 16th, that was the scheduled court date that Mr. Parker was to appear and confess his violation and commence his jail time; is that right?
> A. That is correct.
> Q. And in fact he appeared in court on the 16th, confessed his violation, and started this jail time at that point; is that right?
> A. That is correct.

Trial Tr. at 1507-08.

Notwithstanding the fact that she possessed abundant evidence that the plea at the probation violation hearing would dispose of the assault charge, Parker's penalty-phase counsel did not introduce any other evidence of the plea agreement or of Parker's understanding of the plea agreement. On August 16, the day of Parker's plea at the probation violation hearing, Aulgur submitted a Notice of Nolle Prosequi in the assault case. The same day, the court confirmed the dismissal of the assault case in a letter to

Aulgur. Parker's counsel received copies of these documents from attorney Wilson before trial. <u>See</u> Tr. of 29.15 Hrg. at 38-44; Wilson Aff. Exs. G-H.

Wilson testified at the Rule 29.15 hearing that she believed that the plea agreement would resolve both the assault case and the pending revocation of probation. Tr. of 29.15 Hrg. at 24. Wilson communicated this interpretation of the plea agreement to Parker on August 1, 1990, more than two weeks before Loesch was murdered. She testified that she told Parker that, in light of the plea agreement, there would be no need for Beth Loesch or anyone else to testify. <u>Id.</u> at 21. Furthermore, she informed Parker's penalty-phase counsel of this communication before trial because she was concerned about reports in the media that the State's aggravating circumstances were based on the theory that Parker had murdered Loesch because she was a potential witness. <u>Id.</u> at 43-44, 143-46. Nonetheless, penalty-phase counsel did not call Wilson or introduce any evidence concerning Parker's belief that Loesch was not a potential witness when the murder occurred.

The critical question before the jury at the penalty phase was whether Parker was motivated to murder Loesch because she was a potential witness against him. Central to a determination of Parker's motive was his understanding of the plea agreement. Attorney Wilson's testimony was critical in this regard because she was the only witness who could testify about her interpretation of the plea agreement and her communication of that interpretation to Parker. Accordingly, counsel's failure to call Wilson to testify regarding those matters constituted ineffective assistance. <u>See</u> <u>Chambers</u>, 907 F.2d at 831-32 (holding that counsel's decision not to call the only witness whose testimony could rebut the prosecution's theory of the case and establish self-defense was not objectively reasonable); <u>Driscoll v. Delo</u>, 71 F.3d 701, 709 (8th Cir. 1995) (finding ineffective assistance where counsel failed to expose an obvious and material inconsistency in the prosecution's case). When questioned at the Rule 29.15 hearing about her failure to call Wilson, Parker's penalty-phase counsel acknowledged that if Wilson could testify that Parker did not believe that Loesch was a potential

witness at the time of the murder, there was no excuse for leaving that evidence out. Tr. of 29.15 Hrg. at 164.

Fear that Wilson would disclose privileged information or discuss prior bad acts was not a valid reason for not calling her to testify. The State cites no particular information that would have harmed Parker's case, nor were Parker's guilt-phase and penalty-phase counsel able to point to any specific dangers that might have resulted from calling Wilson. See id. at 117-18, 159. Any possible danger posed by calling Wilson was far outweighed by the potential benefit of her testimony that Parker did not believe that Loesch was a potential witness when he committed the murder. See Chambers, 907 F.2d at 829-31 (holding that positive aspects of a potential witness's testimony outweighed negative aspects because negatives were already in evidence or of de minimis effect); Kenley v. Armontrout, 937 F.2d 1298, 1309 (8th Cir. 1991) (same).

Nor would Wilson's testimony have been merely cumulative. Aulgur could not testify about Wilson's interpretation of the plea agreement, nor could he testify about her statement to Parker that Loesch was no longer a potential witness. Parker's penalty-phase counsel admitted as much at the Rule 29.15 hearing. See Tr. of 29.15 Hrg. at 162-63. We conclude, then, that counsel's decision not to call Wilson constituted representation that fell below an objective standard of reasonableness and thus was ineffective within the meaning of the Sixth Amendment.

The failure to call Wilson undermines our confidence in the outcome of the sentencing proceeding. The State's only aggravating circumstances were that Parker murdered Loesch because she was a potential witness in two cases against him. The jury heard testimony that Parker had pleaded guilty to the probation violation and concluded that he did not murder Loesch because she was a potential witness in that case. There is a reasonable probability that the jury would not have found that Parker murdered Loesch because she was a potential witness in the assault case had it heard

Wilson's testimony that she had told Parker that in light of the plea agreement Loesch would not be a witness against him at the August 16 hearing. Accordingly, Parker's death sentence must be set aside.

## B. Other Penalty Phase Issues

In light of our holding that he is entitled to habeas relief based upon his counsel's failure to call Wilson at the penalty phase, we will touch only briefly upon Parker's contention that his due process rights were violated when the court allowed Loesch's ex-husband to testify during the penalty phase that the family was "very concerned what happens" at the trial. This testimony, argues Parker, amounted to a request that the jury impose a death sentence.

Although family members of the victim may not state "characterizations and opinions about the crime, the defendant, and the appropriate sentence" at the penalty phase, they may testify about the victim and the emotional impact of the victim's death on the family. Payne v. Tennessee, 501 U.S. 808, 830 n.2 (1991) (citing Booth v. Maryland, 482 U.S. 496 (1987) and South Carolina v. Gathers, 490 U.S. 805 (1989)). In Booth, family members of the victims made comments such as "[no one] should be able to do something like that and get away with it" and "[I don't] feel that the people who did this could ever be rehabilitated." 482 U.S. at 508. The Supreme Court held that such comments unconstitutionally directed the jury to draw certain conclusions from the evidence. Id. In Payne, on the other hand, the Court found that a statement that the victim's son missed the victim was permissible testimony about the emotional impact of the victim's death on the family. See 501 U.S. at 826-27.

On the one hand, the challenged testimony was not so outcome-specific as the statements in Booth, which gave opinions about the defendant and suggested that the jury impose the death sentence. On the other hand, however, the testimony did not so directly relate to the emotional impact of the victim's death on the family as did the

statement in <u>Payne</u>. The statement could be interpreted to mean that the family wanted the jury to impose the death sentence, that it did not want the jury to impose the death sentence, or simply that, no matter what the outcome, the trial was a very important event for the family. Whether prudential considerations would counsel against introducing so ambiguous a statement upon retrial is of course a matter for the State to determine.

## IV. Conclusion

We affirm that portion of the district court's order which denies Parker's petition for habeas corpus relief from his conviction. We reverse that portion of the district court's order which denies Parker's petition for habeas relief from his sentence, and we remand the case to the district court with instructions that the district court issue a writ of habeas corpus releasing Parker from the sentence and ordering that the State of Missouri either sentence Parker to life imprisonment without eligibility for probation or parole or grant him a new penalty-phase trial.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.