Rufus James ERVIN, Appellant,

v.

STATE of Missouri, Respondent.

No. SC 83459.

Supreme Court of Missouri, En Banc.

June 25, 2002.

Rehearing Denied Aug. 27, 2002.

land White. After the jury deadlocked on punishment, the trial judge sentenced Ervin to death. Ervin appealed and this Court affirmed. *State v. Ervin,* 979 S.W.2d 149 (Mo. banc 1998). Ervin's Rule 29.15 motion for post-conviction relief claiming ineffective assistance of counsel was overruled. This Court has jurisdiction of the appeal. *Mo. Const. art. V, section 10.*

Ervin contends that his counsel was ineffective in failing to object to certain matters in the guilt phase trial and in failing to investigate matters pertinent to the penalty phase and that he was prejudiced thereby. The motion court, however, did not make specific findings and conclusions on the issue of Ervin's claim that his counsel failed to investigate Ervin's alleged threat and attack on his cellmate. Because this Court lacks an adequate basis on which to review this claim, the motion court's judgment as to the penalty phase is vacated and remanded for findings of fact and conclusions of law relating to the alleged threat to and attack on the cellmate. This Court affirms the motion court on all other points.

## The Facts and Motion Court Judgment[1]

■ On September 1, 1994, Ervin, Lucius House, Keith McCallister and Henry Cook drove to Leland White's trailer, where Ervin also had lived. Upon arriving, Ervin met White outside the trailer and went with him inside. About 15 minutes later, House heard Ervin yelling, "This is mine. This is mine." White called for help. Something hit against the trailer wall, a lamp was knocked over, and the trailer caught fire.

Melinda K. Pendergraph, Pete Carter, Asst. Public Defenders, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cassandra K. Dolgin, John M. Morris, Assistant Attorney Generals, Jefferson City, for Respondent.

MICHAEL A. WOLFF, Judge.

Rufus James Ervin was convicted of murder in the first degree for killing Le-

---

1. The facts are viewed in the light most favorable to the verdict and judgment. *State v. Shurn,* 866 S.W.2d 447, 455 (Mo. banc 1993). Since the standard under which this Court views the unusual facts of this case is the same as for a direct appeal, the facts of the direct appeal are adopted and summarized in this opinion.

Ervin dragged White, who was naked, out of the trailer after it caught fire, pulling him by something tied around White's neck. White then said to Ervin, "Just go ahead and kill me, James. Just kill me, James." Ervin picked up a brick and hit White four or five times on the head. Ervin began to walk away from White but returned to him after White moved. Ervin then hit White three or four additional times in the head with the brick. Ervin returned to the car and said to the others, "The motherfucker said kill me, so I did."

Jefferey McSpadden, the Reynolds County coroner, arrived after Ervin sought help from a neighbor. Ervin claimed that White's trailer had exploded. McSpadden determined that the cause of death was an open skull fracture. After speaking with McSpadden, a police officer arrested Ervin, Cook, House, and McCallister. Ervin confessed to the police to hitting White in the head with a brick.

A jury found Ervin guilty of murder in the first degree. In the penalty phase of trial, the state presented evidence of Ervin's prior convictions for assault upon a law enforcement officer and two weapons counts. The state's evidence also included a previous arrest for driving while intoxicated, which included verbally abusive and physically violent conduct following the arrest.

A former Phelps County jailer testified that Ervin threatened to kill his cellmate. The jailer also testified that Ervin assaulted the jailer, causing a broken right jaw joint and a bruised brain with swelling.

Ervin presented evidence from two clinical psychologists, but no evidence rebutting the threat to kill Ervin's cellmate or testimony to explain the circumstances of this altercation in the Phelps County jail.

Before trial, Ervin's trial counsel [2] met with Ervin's mother. His mother provided trial counsel with a list of Ervin's siblings. Counsel did not interview them or ask them to testify. Counsel spoke briefly to one of Ervin's sisters when she called his office prior to trial, asking how she could help her brother. He told her to come to the trial. Ervin's mother and one of his sisters attended trial. None of his family members was called to testify during the penalty phase.

After hearing evidence, instructions, and arguments by counsel in the penalty phase, the jury was unable to reach a verdict on punishment. The trial court sentenced Ervin, as provided under section 565.030.4. The court imposed a sentence of death. This Court affirmed on direct appeal.

Thereafter, Ervin filed a timely Rule 29.15 motion in the trial court for post-conviction relief. He claimed his attorney was ineffective. The court held a hearing on Ervin's claims and overruled his motion.

## The Standard of Review

This Court's review is limited to determining whether the motion court clearly erred in its findings and conclusions. Rule 29.15(k); *State v. Wise*, 879 S.W.2d 494, 524 (Mo. banc 1994). The findings and conclusions of the motion court "are clearly erroneous only if, after review of the entire record, the appellate court is left with the definite impression that a mistake has been made." *State v. Parker*, 886 S.W.2d 908, 929 (Mo. banc 1994).

## Effective Assistance of Counsel

The right to counsel guaranteed by state and federal constitutions includes the right to effective assistance thereof.

---

2. Ervin's trial counsel was not Ervin's original choice. Trial counsel, a private practitioner, took the case after Ervin's original attorney was disbarred.

*State v. Harvey,* 692 S.W.2d 290 (Mo. banc 1985). With respect to claims of ineffective assistance of counsel, the burden is on the claimant to prove that his counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to meet this standard movant must show by a preponderance of the evidence: (1) that trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances and (2) that counsel's deficient performance was prejudicial to the defense. *Id.*

**Trial Counsel's Failure to Object During Guilt Phase**

Ervin claims that his attorney was ineffective for failing to object on matters during trial. The first two, as Ervin alleges, involve trial counsel's failure to object to improper argument when the state asked the jurors to: (1) imagine how painful it was to have their throats cut as White's was; and (2) punish Ervin for exercising his constitutional rights to a jury, counsel, and a fair and impartial trial. Ervin also claims that his attorney failed to object to improper *voir dire.*

**Application of *Strickland* Test to Failure to Object**

The motion court rejected Ervin's claim that his attorney was ineffective for failing to object to improper argument in closing and during *voir dire,* concluding, "Movant sought plain error review challenging this argument on direct appeal .... The Missouri Supreme Court denied relief, having 'reviewed the record and [found] no manifest injustice or miscarriage of justice, even assuming, *arguendo,* that these statements were improper.'" The motion court

cited *Sidebottom v. State,* 781 S.W.2d 791, 796 (Mo. banc 1989).

This Court later rejected this interpretation of *Sidebottom.* In *Deck v. State,* 68 S.W.3d 418 (Mo. banc 2002), this Court stated, "Various opinions have taken ... language from *Sidebottom* ... out of context and have incorrectly concluded that '[a] finding of no manifest injustice on direct plain error review establishes a finding of no prejudice for purposes of the *Strickland* test.'" *Id.* at 427. The two tests are not the same. *Id.* Thus, the motion court in this case applied the wrong legal standard. However, even under the correct standard, Ervin has not carried his burden of showing incompetence and has not shown prejudice. *See State v. Hubert,* 923 S.W.2d 434, 438 (Mo.App.1996).

The mere failure to make objections does not constitute ineffective assistance of counsel. *State v. Bearden,* 926 S.W.2d 483, 486 (Mo.App.1996). To justify relief on a post-conviction motion, the failure to object "must have been of such character as to deprive the defendant substantially of his right to a fair trial." *Id.*

**1. Allegation that Prosecutor Improperly Placed Jurors in the Shoes of the Victim**

Ervin's first claim is that the prosecutor asked the jurors to imagine themselves in the place of the victim experiencing the detail of the crime. Arguing for jurors to place themselves in the shoes of a party or victim is improper personalization that "can only arouse fear in the jury." *State v. Storey,* 901 S.W.2d 886, 901 (Mo. banc 1995). In *Storey,* the prosecutor asked the jurors to put themselves in the victim's place, then graphically detailed the crime as if the "jurors were the victims ...." *Id.*

The prosecutor in this case did not use the kind of graphic detail that would lead

the Court to conclude that Ervin was prejudiced. The prosecutor made the remarks, not to highlight the gruesome nature of the murder, but to explain why White stated, "Just go ahead and kill me. Come back and kill me." [3] This statement was far less inflammatory than the statement made in *Storey* and cannot be said to have tainted the jury with suggestions of personal danger to them or their families. *Id.*

## 2. Allegation that Prosecutor Punished Ervin for Exercising His Right to a Jury Trial

■ Ervin next claims that the prosecutor sought to punish Ervin for exercising his right to a jury trial. During closing arguments, the prosecutor stated:

[Defense counsel] makes reference to a great country. And it is a great country. And this defendant even acknowledged that. Because he is aware and he pointed out to you that he has a jury here. That he has a defense attorney. That he has a judge. And he's had his trial.

But Lee White was also entitled to a trial before the punishment of death was imposed upon him, by him. But he didn't get one. Because on September 1, 1994, there was no jury there to listen to the facts. Mr. White had no lawyer to stand up and argue for him. There was no judge to oversee the proceedings that were taking place in that trailer and then out in the yard in front of it. Mr. White was afforded none of that. And that was the injustice.

Ervin contends that these words show that the prosecutor argued an improper aggravating circumstance, characterizing Ervin's exercise of his right to trial as an aggravating circumstance. A defendant's exercise of his constitutional rights cannot be used against him. *See State v. Dexter*, 954 S.W.2d 332 (Mo. banc 1997). It cannot be said that Ervin's decision to exercise his constitutional rights was held against him based on the prosecutor's remarks. The prosecutor's statement did not seek to punish Ervin for exercising his right to a trial by jury. Instead, the prosecutor's statements highlight the nature and seriousness of the crime and Ervin's disregard for the law. The prosecutor's statements were not objectionable.

## 3. Allegation that Prosecutor Made Improper Comments During *Voir Dire*

■ Ervin's final claim is that his counsel failed to object during *voir dire* when the prosecutor used the example of killing a law enforcement officer as an example of an aggravating circumstance.

---

**3.** The prosecutor stated, in relevant part: "But what else do we know, after they come out of the trailer? The testimony here is something that may at first sound a little strange. Lee White said what may seem like a strange thing. He says, more or less, he says, 'Just go ahead and kill me. Come back and kill me.' You may think that's strange, but just think about it a moment. Lee White is an older man. He's retired. He's obviously not living out with a wife and kids or anything. He's out there on his piece of property. He's been working, the testimony was, for years, improving it, putting a trailer out there. The defendant, he treated him like a son these 20 years or so. Made him the sole heir of his last will and testament. And where is Lee White at this point? He's just had his throat cut by James Ervin. And he's being left, Dr. Zaricor tells you, with a wound he's going to bleed to death from, possibly even basically drown in his own blood perhaps, laying there. He's laying there bleeding to death. You can imagine how—certainly, it's got to be very painful to have your throat cut, the way his throat was cut. He's laying there bleeding to death, dying, watching his trailer and everything he has burn to the ground, and what did he say? He said, 'Please, just come back and finish me off.' It's not that strange that he said it ...."

During *voir dire*, the prosecutor made the following statement:

> And what's an aggravating circumstance? In Missouri there's about 17 of them listed in the statutes. Listed in the law books. And these are circumstances which make a first degree murder case worse than another first degree murder case. An example of an aggravating circumstances [*sic*], which is not applicable to this case, would be if someone murdered a police officer in the line of duty. That would be one of the 17 aggravating circumstances and something which, in a hypothetical case, we may attempt to prove during the second phase of trial . . . .

The prosecutor provided an example of a statutory aggravating circumstance and expressly told the venire members that his case did not involve that particular aggravating circumstance. A correct statement of law is not objectionable. *State v. Richardson*, 923 S.W.2d 301, 321 (Mo. banc 1996).

**Failure to Investigate Ervin's Background**

■■■ Ervin claims his counsel was also deficient in that he failed to conduct a reasonable investigation into his background for purposes of discovering mitigating evidence.

■■■■ "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052. What investigation decisions are reasonable depends "critically" on what information the defendant has supplied his lawyer. *Id.* "And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Id.*

Here, defense counsel investigated Ervin's family and his social and psychological background via interviews with Ervin and his mother. He also procured Ervin's medical records and psychological history. He then hired two psychologists to evaluate Ervin and furnish him with a report of their findings. None of this investigation by counsel yielded a clue that any additional mitigating evidence would be forthcoming by interviewing Ervin's siblings or additional family. Given the scope of defense counsel's investigation of Ervin's family, social, and psychological background and what it revealed, Ervin's counsel acted reasonably when he opted to forego interviewing additional family members. In the circumstances here, it was not unreasonable for counsel to decide against interviewing Ervin's family members as all signs, *at the time of counsel's decision*, indicated that further investigations into Ervin's background would be cumulative and fruitless.[4]

---

4. There are circumstances in which failure to present testimony of the accused's family members or other lay witnesses may be prejudicial. Scott E. Sundby, *The Jury As Critic: An Empirical Look At How Capital Juries Perceive Expert and Lay Testimony*, 83 Va. L.Rev. 1109 (1997). Despite the predictable testimony of family witnesses, "jurors rarely held it against a defendant; to the contrary, they frequently identified family witnesses as among the most favorable defense witnesses. Indeed, probably because such testimony is expected, it was the absence of such testimony that was unfavorably noted. . . . A review of jurors' statements regarding family and friends testimony reveals both an emotional and a factual component to its effectiveness. At the most basic level, from an emotional viewpoint, the testimony shows that someone cares about the defendant and believes that he has some redeeming value." *Id.* at 1152.

**Failure to Investigate the Alleged Threat to and Attack on Ervin's Cellmate**

In Ervin's direct appeal, he claimed that the trial judge erred by submitting instructions on non-statutory aggravating circumstances. This Court approved the use of the alleged threat and attack on the cellmate as a non-statutory aggravating circumstance that the jury could consider to justify recommending the death penalty. Specifically, this Court cited the record as supporting the instruction because Ervin "threatened to kill his cellmate *if officers did not remove the cellmate.*" *State v. Ervin*, 979 S.W.2d at 157–58. Ervin claims that his trial counsel was ineffective for failing to do any investigation which, had reasonable inquiries been made, would have shown that Ervin did not threaten his cellmate and did not attack him.

Findings of fact and conclusions of law made by a court upon motion for post-conviction relief must be specific enough to permit meaningful appellate review. *State v. Parker*, 886 S.W.2d 908, 932 (Mo. banc 1994). The findings and conclusions in this case relating to Ervin's claim that his counsel failed to investigate the alleged attack on his cellmate, Christian Dietrich, are not specific enough. The state argues that Ervin is barred from making an ineffective assistance claim as to the failure to investigate the threat to and attack on cellmate Dietrich.

The state contends that Ervin's argument in the motion court was based upon counsel's failure to investigate an alleged assault on sheriff's deputy Schoengert while Ervin was incarcerated in the Phelps County jail, not in relation to an attack on Christian Dietrich. The state argued that Ervin was barred from raising the ineffective assistance claim in relation to Christian Dietrich; the motion court did not address the merits of Ervin's claim. However, Ervin's motion to vacate, section 8(J), is titled "Ineffective Assistance of Counsel—Failure to Investigate and Present Evidence—Alleged Assault in Phelps County Jail." In his facts pled, Ervin states that Schoengert testified that Ervin threatened to kill a fellow inmate. Additionally, Dietrich's name was emphasized in relation to the public defender providing information regarding the assault. Ervin's motion thus makes sufficiently clear the facts of the claim and the issues to be decided.

With the exception of the alleged threat and attack on the cellmate, the motion court consistently identified specific allegations raised in the motion and made findings of fact and conclusions of law as to each. Perhaps because of the generality of the pleading, the motion court did not issue specific findings and conclusions on this point. Yet, the motion court found that "Movant's counsel ... presented no evidence to rebut the state's aggravating evidence that [Ervin] had assaulted Dietrich and threatened to kill him. Counsel testified that he would not have wanted to interview these witnesses about this matter because he believed it was best to just let the state put on whatever evidence it had and then let the matter 'drop.' "

Although the motion court recapped Ervin's evidence about the jail cell incidents—evidence that could be viewed as at least mitigating Ervin's role in assaulting jailer Shoengert and as rebutting evidence that Ervin assaulted cellmate Dietrich—the court made only findings and conclusions as to defense counsel's failure to investigate the Schoengert incident.

This Court will not order a "useless remand" for the motion court to consider an issue "where it is clear that movant is entitled to no relief as a matter of

law." *Middleton v. State*, 80 S.W.3d 799, 810 (Mo. banc 2002) (*quoting State v. Hall*, 982 S.W.2d 675, 679 (Mo. banc 1998), and *White v. State*, 939 S.W.2d 887, 903 (Mo. banc 1997)). A brief review of the evidence before the motion court shows a remand would not be useless.

■ The crucial evidence centered on an alleged altercation in the Phelps County jail between Ervin and his cellmate, Christian Dietrich, which resulted in Ervin assaulting a jailer, David Schoengert.

The jailer, David Schoengert, testified, in relevant part, that on January 20, 1996, Ervin had assaulted cellmate Dietrich and threatened to kill him. Schoengert testified that movant "was standing in the window hollering for me to get that individual [Dietrich] out" of the cell. He further stated, "He told me that I [Schoengert] needed to hurry up or else he [Ervin] was going to kill him." Asked again by the prosecutor, "Or else he [Ervin] was going to kill his cellmate," Schoengert again responded, "Yes." When asked by the prosecutor if Schoengert observed any "injuries" on Dietrich, Schoengert answered, "He had some markings to the left side—I believe it was the left side of his face."

Ervin's defense counsel presented no evidence to rebut the state's aggravating evidence that Ervin assaulted Dietrich and threatened to kill him.

Ervin's trial attorney testified at the Rule 29.15 hearing that he did not interview Ervin's alleged victim, Christian Dietrich. He also testified that he did not interview inmate Terry Pearson, even though Ervin wrote to his attorney and requested that he interview Pearson about the incident. Ervin's trial counsel testified that he did not obtain the Rolla public

defender office's interview and statement of Terry Pearson, in which Pearson acknowledged that he and another inmate, not Ervin, had committed the assault. At most, trial counsel reviewed the police report of the incident prepared by jailer Schoengert and spoke to David Mills, district defender of the Rolla public defender's office when Mills offered to provide information regarding the assault on jailer Schoengert. Trial counsel never requested the information that Mills had acquired.

If trial counsel had interviewed Dietrich or Pearson, or requested material in connection with the Rolla public defender's investigation, the attorney would have learned of substantial evidence that Ervin did not assault Dietrich, according to the record in the motion court. Pearson testified by deposition in the motion hearing that he had given a statement to the Rolla public defender before Ervin's trial in which Pearson stated that he and another inmate, not Ervin, had assaulted Christian Dietrich. Dietrich testified in the motion hearing to the same facts.

■ Under Missouri law, the jury must unanimously find at least one statutory aggravating circumstance to impose the death penalty. *Section 565.030.4.* If at least one statutory aggravating circumstance is found, the jury is then to consider mitigating and other aggravating factors. *State v. Ramsey*, 864 S.W.2d 320, 337 (Mo. banc 1993). In general, "both the state and the defense are allowed to introduce evidence regarding 'any aspect of the defendant's character.'" *State v. Worthington*, 8 S.W.3d 83, 90 (Mo. banc 1999). Under this scheme, "the jury must consider both aggravating and mitigating factors before returning a death sentence verdict." *Id.*[5]

---

**5.** In light of the disposition of this appeal, the question of whether Ervin was constitutional-

ly entitled to a jury finding of an aggravating circumstance in order for the judge to impose

During the punishment phase of trial, rebuttal testimony is permissible. *See, e.g., State v. Leisure,* 749 S.W.2d 366, 380 (Mo. banc 1988). The state must provide defense counsel notice of non-statutory aggravators because defense counsel would otherwise not have an adequate opportunity to rebut the state's aggravating evidence. *See State v. Thompson,* 985 S.W.2d 779, 791–93 (Mo. banc 1999).

Rebuttal of aggravating evidence, where rebuttal evidence is available and efficacious, is one of the duties of trial counsel. One of the primary duties of counsel at a capital sentencing proceeding is to neutralize the aggravating circumstances advanced by the state and present mitigating evidence. *See Bell v. Cone,* No. 01-400, —— U.S. ——, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *see also Starr,* 23 F.3d at 1285. Accordingly, defense counsel's failure to investigate and to call available and useful rebuttal witnesses to aggravating evidence constitutes ineffective assistance of defense counsel. *See, e.g., Parker v. Bowersox,* 188 F.3d 923, 929 (8th Cir. 1999).

In addition to proving ineffective assistance of counsel, Ervin must show prejudice, that is, that there is a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Shurn,* 866 S.W.2d 447, 468 (quoting *State v. Ervin,* 835 S.W.2d 905, 929 (Mo. banc 1992)). A reasonable probability, under *Strickland,* is "a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. 2052.

The potential for prejudice is strong because of the prosecution's use of evidence of the alleged threat to kill the cellmate. The state's argument for the death penalty is bolstered by showing that a defendant will probably pose a danger to others while incarcerated. The state argued in its sentencing memorandum to the court that "if defendant does not receive the death penalty, he will pose a serious and continuing threat to others while incarcerated."

It is one thing to say that Ervin attacked jailer Schoengert after Ervin attacked and threatened to kill his cellmate. It is entirely different to say that Ervin attacked jailer Schoengert after Ervin attempted to rescue his cellmate from an assault by two other inmates. The characterization of Ervin as an inmate who would rescue a cellmate from harm versus an inmate who would kill his cellmate is highly material in a sentencing proceeding.

Whether these failures constituted ineffective assistance of counsel and were prejudicial are questions that should be addressed by the motion court in the first instance.

### Conclusion

This case is remanded to the motion court in order to make more specific findings and conclusions on the issue of Ervin's counsel's failure to investigate the alleged threat to and attack on his cellmate and to consider the application of *Ring v. Arizona,* —— U.S. ——, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). The motion court should grant leave to Ervin and the state to adduce additional evidence, if they choose. On all other points, the motion court is affirmed.

---

the death penalty need not be reached at this time. The applicability of the Supreme Court's decision in *Ring v. Arizona,* —— U.S ——, 122 S.Ct. 2428, 153 L.Ed.2d 551 (2002), to the constitutional issues in this case can be addressed by the motion court in the first instance on remand.

WHITE, BENTON, LAURA DENVIR STITH and PRICE, JJ., concur.

KENNETH W. SHRUM, Sp.J., concurs in result in separate opinion filed.

LIMBAUGH, C.J., concurs in opinion of SHRUM, Sp.J.

RICHARD B. TEITELMAN, J., not participating.

KENNETH W. SHRUM, Special Judge, concurring.

I concur in the result reached by the principal opinion. I write separately for the following two reasons.

First, with regard to the remand issue, i.e., whether trial counsel was ineffective in his conduct and decision relating to Ervin's alleged threat against and attack on his cellmate, I agree with the principal opinion's directive that the motion court should allow Ervin and the State to present additional evidence, if they so choose. However, because additional evidence may be adduced, I respectfully depart from the principal opinion to the extent that it strongly suggests to the motion court the disposition it should make of this issue.

Second, I am persuaded that the principal opinion's reliance on the law review article cited in n. 4 is misplaced. This follows because this article analyzed information collected from a sample size of only 152 respondents who served on juries in 36 capital cases in California and interviewed during 1991–92. Scott E. Sundby, *The Jury As Critic: An Empirical Look At How Capital Juries Perceive Expert and Lay Testimony,* 83 Va. L.Rev. 1109, 1113, and n. 14 (1997). The sample upon which the article was based was selected from *The Capital Jury Project. Id.* at 1112. The law review article has no reliable data to show that the conclusions reached from data collected from California jurors is generalizable to Missouri jurors, or for that matter, to jurors of any state other than California. To so generalize would cut against the entire spirit and purpose of *The Capital Jury Project. See* William J. Bowers, *The Capital Jury Project: Rationale, Design, and Preview of Early Findings,* 70 Ind. L.J. 1043 (1995). "State-specific data are used to address particular issues of interest in the respective states." *Id.* at 1077. For these reasons, I depart from the principal opinion to the extent that it relies on the law review article to support the comment made in n. 4.